No. 40793.—Protest 933880–G of Keer, Maurer Co. (Philadelphia).

KEEFE, Judge: The merchandise in question consists of fifteen cases of tobacco siftings exported from the United States and returned thereto without any advance in value or change in condition. The merchandise was entered as American goods returned under paragraph 1615, Tariff Act of 1930, and admitted thereunder without the payment of duty. However, the collector demanded the payment of internal-revenue tax at the rate of 18 cents per pound, under section 314, Tariff Act of 1930. The plaintiff claims that said internal-revenue tax does not attach to tobacco siftings.

At the trial it was established that tobacco siftings are a scrap tobacco, consisting of broken leaves and waste resulting from the manufacture of tobacco into cigars, and that in the condition as imported it was sold to the Higdon Cigar Co. for use in the manufacture of cigars. The plaintiffs are termed quasi-manufacturers, and buy tobacco byproducts known as tobacco scrap from various cigar manufacturers, grade, blend, and sort it into different sizes and sell the resulting scrap tobacco to cigar and tobacco manufacturers. The tobacco as sold by the importer herein is not suitable for sale for consumption and is sold only to manufacturers who manipulate it to a condition suitable for consumption, changing it from a raw state into a manufactured article, such as smoking or chewing tobacco. As a quasi-manufacturer the importer is never required to pay internal-revenue tax upon tobacco. All that is done in that regard is to keep a record of all the tobacco that passes through their hands, showing where the tobacco came from and to whom it was shipped for processing. A deputy collector of internal-revenue testified that siftings are not considered package goods and that internal-revenue taxes are not applicable thereto until the siftings are manufactured into a product salable for smoking or chewing, and that a tax is not applicable to sales from a quasi-manufacturer to a manufacturer of siftings.

Section 314 of the Tariff Act of 1930 provides in part as follows:

SEC. 314. REIMPORTATION OF TAX-FREE EXPORTS.

Upon the reimportation of articles once exported, of the growth, product, or manufacture of the United States, upon which no internal tax has been assessed or paid, or upon which such tax has been paid and refunded by allowance or drawback, there shall be levied, collected, and paid a duty equal to the tax imposed upon such articles by the internal revenue laws at the time of reimportation.

Paragraph 1615 of the Tariff Act of 1930 so far as applicable reads as follows:

* * * *Provided further*, That when manufactured tobacco which has been exported without payment of internal-revenue tax shall be reimported it shall be retained in the custody of the collector of customs until internal-revenue stamps in payment of the legal duties shall be placed thereon * * *.

Sections 700 (a) and 835 (a) (2) of the internal-revenue act provide as follows:

(a) TOBACCO AND SNUFF.—Upon all tobacco and snuff manufactured in or imported into the United States, and sold by the manufacturer or importer, or removed for consumption or sale, there shall be levied, collected and paid a tax of 18 cents per pound. The tax imposed by this subsection shall be in addition to any import duties imposed upon imported tobacco and snuff.

SEC. 835. EXEMPTION FROM TAX. (a) * * *

* * * * * * *

(2) MATERIALS.—Perique tobacco, snuff flour, fine-cut shorts, the refuse of fine-cut chewing tobacco, refuse scraps, clippings, cuttings, and sweepings of tobacco, may be sold in bulk as material, and without the payment of tax, for export under such restrictions, rules, and regulations as the Commissioner may prescribe.

Title 26 of the U. S. Code Annotated, section 830 (d), reads in part as follows:

Scraps, cuttings, and clippings of tobacco imported from any foreign country may, after the proper customs duty has been paid thereon, be withdrawn in bulk without the payment of the internal-revenue tax, and transferred as material directly to the factory of a manufacturer of tobacco or snuff, or of a cigar manufacturer, under such restrictions and regulations as shall be prescribed by the Commissioner and approved by the Secretary.

In determining whether or not the tobacco material here imported should be liable to the payment of an internal-revenue tax at the time of importation, all of the provisions relating to tobacco should be read and considered together.

The provision in paragraph 1615 has reference solely to manufactured tobacco. Section 700 (a) of the internal-revenue act providing for payment of a tax of 18 cents per pound can not be reasonably construed to apply to tobacco other than in the manufactured state, and section 835 of the revenue act specifically provides that tobacco may be sold for export as materials without the payment of any revenue tax. Finally, title 26 of the United States Code, section 830 (d), provides that scraps of tobacco imported from any foreign country may be withdrawn from customs custody without payment of internal-revenue tax. Therefore, in the light of the foregoing provisions, it is clear that section 314 does not apply to tobacco which is exported and returned to this country when in the condition of a tobacco upon which no internal-revenue tax is assessable, either upon the American product not so exported, or upon an imported foreign product.

For the reasons stated, we hold that tobacco siftings, the waste resulting from tobacco manufacturing processes, established to be a scrap tobacco, which has been exported from the United States and returned thereto in exactly the same condition as exported, and released from customs custody without the payment of duty, and which entered the commerce of the United States in the same state as similar American tobacco siftings, is no more the subject of internal-revenue tax than if it had never been exported.

Judgment will therefore be entered in favor of the plaintiff, directing the collector of customs to reliquidate the entry and to refund all revenue tax taken thereon.

### DISSENTING OPINION

EVANS, Judge: I regret not to be able to agree with the majority opinion filed herein. I deem it necessary to point out the reasons which have persuaded me to the conclusion I have reached.

At the outset it is rather a complicated case and it will be necessary to call attention to certain facts that appear of record not noted in the majority opinion.

It appears from article 99 of the Regulations 8 (Exhibit 2 for Identification) relating to taxes on tobacco, snuff, etc., promulgated by the Bureau of Internal Revenue, that it is provided as follows:

Perique tobacco, snuff flour, fine-cut shorts, the refuse of fine-cut chewing tobacco, refuse scraps, cuttings, clippings, and sweepings of tobacco, * * * may be removed from a factory without the payment of tax, for export, only in compliance with the regulations governing the shipment and exportation of taxable tobacco manufactures (Regulations No. 73). The manufacturer, after having filed export bond to cover this class of material, must file an application on Form 550 for each withdrawal. * * *

Pursuant to this regulation which was made under authority of section 3362 of the Revised Statutes, Henry A. Fischel, Inc., under date of October 10, 1935, filed with the collector of internal revenue at Philadelphia, Form 550 entitled "Application for Withdrawal and Entry for Exportation." This showed that the withdrawal was to be from manufactory 67 of Henry A. Fischel, Inc., located at 418 N. 3rd St., Philadelphia, Pa. The form states that the merchandise withdrawn

was to be consigned to Van Gorp & Ravet, 16 Rempart St., Georges, Antwerp, Belgium. Two groups of merchandise were withdrawn. One group bore marks and numbers on shipping cases as follows:

| Marks and Numbers | Class | Product Number | Quantity | Rate | Tax Liability |
|---|---|---|---|---|---|
| R #581–595 | | 15 cases Tobacco SIFTINGS #2 | 3252 –1203–2049 lbs. net | $.18 | $368.82 |

The collector's order to the deputy on said form is as follows:

You are hereby directed to proceed to the above-named factory and there inspect and verify the quantity of the above-described articles, and if the shipment is found in every way to correspond with the description above, after the manufacturer has marked or branded on each package the first three lines of the legend shown herewith, in letters and figures not less than three-fourths of an inch in length, you will complete the legend on each package by marking or branding in letters and figures of the same length the date of your inspection and your name and title. * * *

The deputy's report on the above order was as follows:

I hereby certify that I have this day inspected the above-described articles, and find them properly marked and branded and to agree in all particulars as described above except as noted below, and that I have completed the legend on each package and delivered the same as directed. I further certify that I have compared each copy hereof and find that they agree in every respect.

A part of the official papers consists of an affidavit for free entry of returned American products which was executed at the office of the collector of customs at Philadelphia on September 10, 1936, by A. A. Fischel, secretary of Associated Tobacco Exporters, Henry A. Fischel, Inc., Agt. This recites that fifteen cases of tobacco siftings covered by the entry in question are truly and bona fide of the manufacture of the United States, that they were shipped from the United States by the Associated Tobacco Exporters for the account of same to Van Gorp & Ravet and that they are returned to Associated Tobacco Exporters of Philadelphia, Pa. Attached to the invoice of returned American goods and a part thereof is a declaration by Arnold Van Benschoten, vice consul of the United States. The invoice notes the marks and quantity of tobacco as follows:

| Marks | Numbers | Quantity | Description | Value, U. S. Coin |
|---|---|---|---|---|
| R | 581/595 | 15 | cases tobacco siftings Nr 2 | Net value $244.86 |

The appraiser advisorily classified the same as scrap tobacco and the notation in red ink, which I accept as being the action of the examining officer or appraiser, is as follows: "No indication of American Origin on cases." It also contains the following certificate from the drawback section (in red ink):

No drawback of customs duties. $368.82 equals amt. of internal rev. remitted on exportation, which now becomes a duty under Sect. 314, T. Act of 1930. 2049 lbs. net on export.

While the above notation indicates that there has been a remittance of internal-revenue tax on exportation, I incline to believe that such statement is not an accurate statement of fact since the merchandise was withdrawn without the payment of tax. A consumption entry was made of the merchandise, being entry 01583, which shows that importation was made by Keer, Maurer Co., account Associated Tobacco Exporters. This invoice covers the same case numbers and the description of the merchandise is "Fifteen (15) Cases Tobacco Siftings, Returned American Products, 2500 lbs." The liquidated duty, according to the red-ink notation thereon, was equal to the internal-revenue tax, being $368.82, which was the amount of tax noted on the application for withdrawal and entry for duty and not the amount of tax on 2,500 pounds of scrap tobacco.

The protest in this case is signed by Keer, Maurer Co. Associated Tobacco Exporters, Henry A. Fischel, Inc.

The provision in the Tariff Act of 1930 relating to American goods returned effective on the date of this importation is as follows:

PAR. 1615. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means, if imported by or for the account of the person who exported them from the United States; steel boxes, casks, barrels, carboys, bags, and other containers or coverings of American manufacture exported filled with American products, or exported empty and returned filled with foreign products, including shooks and staves when returned as barrels or boxes; also quicksilver flasks or bottles, drums of iron, steel, or other metal of either domestic or foreign manufacture, used for the shipment of acids, or other chemicals, which shall have been actually exported from the United States; but proof of the identity of such articles shall be made, under general regulations to be prescribed by the Secretary of the Treasury, but the exemption of bags from duty shall apply only to such domestic bags as may be imported by the exporter thereof, and if any such articles are subject to internal-revenue tax at the time of exportation, such tax shall be proved to have been paid before exportation and not refunded; photographic dry plates and films of American manufacture (except moving-picture films to be used for commercial purposes) exposed abroad, whether developed or not, and photographic films, light-struck or otherwise damaged, or worn out, so as to be unsuitable for any other purpose than the recovery of the constituent materials, provided the basic films are of American manufacture, but proof of the identity of such articles shall be made under general regulations to be prescribed by the Secretary of the Treasury; articles exported from the United States for repairs may be returned upon payment of a duty upon the value of the repairs at the rate at which the article itself would be subject if imported, under conditions and regulations to be prescribed by the Secretary of the Treasury: *Provided*, That this paragraph shall not apply to any article upon which an allowance of drawback has been made, the reimportation of which is hereby prohibited except upon payment of duties equal to the drawbacks allowed; or to any article manufactured in bonded warehouse and exported under any provision of law; except that it shall apply to articles (not dutiable under section 504 as unusual coverings and containers) used as coverings or containers for merchandise not subject to an ad valorem rate of duty: *Provided further*, That when manufactured tobacco which has been exported without payment of internal-revenue tax shall be reimported it shall be retained in the custody of the collector of customs until internal-revenue stamps in payment of the legal duties shall be placed thereon: *And provided further*, That the provisions of this paragraph shall not apply to animals made dutiable under the provisions of paragraph 1606.

Section 314 of the same act carries the following provision:

## SEC. 314. REIMPORTATION OF TAX-FREE EXPORTS.

Upon the reimportation of articles once exported, of the growth, product, or manufacture of the United States, upon which no internal tax has been assessed or paid, or upon which such tax has been paid and refunded by allowance or drawback, there shall be levied, collected, and paid a duty equal to the tax imposed upon such articles by the internal revenue laws at the time of reimportation, except articles manufactured in bonded warehouses and exported pursuant to law, which shall be subject to the same rate of duty as if originally imported, but proof of the identity of such articles shall be made under regulations to be prescribed by the Secretary of the Treasury.

Duty was assessed against Keer, Maurer Co., in the amount of the internal-revenue tax noted on the invoice because that firm failed to comply with the provisions of article (d) of section 485 of the Tariff Act of 1930, and particularly with subsection 3, in that it did not file within ninety days from the date of the entry the declaration of the owner as required. We must presume that the officers complied with the statute, and there being no declaration among the papers present, it must be concluded that they filed no declaration of ownership. So far as customs matters were concerned Keer, Maurer Co., on the face of the record, was deemed to be the owner of this merchandise. It would appear from the oral testimony, however, that Henry A. Fischel, Inc., was actually the owner. That

testimony would appear to be in conflict with the affidavit of free entry made by A. A. Fischel of Henry A. Fischel, Inc., Agent, Associated Tobacco Exporters, wherein he recited that the merchandise was shipped from the United States by the Associated Tobacco Exporters, returned to them and for their account. I seriously question whether Henry A. Fischel & Co., should be allowed to intervene because they signed a protest in a matter wherein the customs authorities could no longer recognize them, and in view of the statement in the affidavit for free entry.

The majority opinion recites that the plaintiffs are termed quasi-manufacturers. The plaintiff named is termed Keer, Maurer Co. The evidence discloses that they are brokers. If it was the view of the majority opinion that the Associated Tobacco Exporters were quasi-manufacturers then there is nothing in the record to support that statement. If Henry A. Fischel, Inc., is to be considered a party then it is not a quasi-manufacturer but a manufacturer, according to the application for withdrawal. I am of the opinion that the protest should be overruled because of the fact that it falls within the terms of the proviso in paragraph 1615 quoted above that when manufactured tobacco exported without payment of internal-revenue tax shall be reimported it shall be retained in the custody of the collector of customs until internal-revenue stamps in payment of the legal duties shall be placed thereon.

This merchandise was manufactured tobacco within the classification of manufactured tobacco as promulgated by Regulations 8, *supra*, article 44, which defines class 5 as:

Smoking, where the product consists of * * * tobacco *scraps*, cuttings, or clippings, prepared or suitable for smoking purposes. [Italics supplied.]

Within that description this merchandise, tobacco scraps, is classified for internal-revenue purposes as smoking tobacco.

Section 401 (a) of the Revenue Act of February 26, 1926 (Sec. 700 U. S. C. Title 26) provides:

401 (a) Upon all tobacco * * * imported into the United States, and sold by the * * * importer, or removed for consumption or sale, there shall be levied, collected, and paid a tax of 18 cents per pound. The tax imposed by this subsection shall be in addition to any import duties imposed upon imported tobacco * * *.

. The record in this case shows that the merchandise was withdrawn from customs custody and was sold. Under the foregoing provisions of the statutes and the regulations made pursuant thereto this merchandise was dutiable at 18 cents per pound, the same being the amount of the internal-revenue tax upon said merchandise.

The majority opinion, in my judgment, undertakes to extend to an importer the privileges accorded a manufacturer of tobacco by the internal-revenue bureau, operating under that bureau, under the bonds given by such manufacturer. When the owner of this tobacco, whoever he may have been, exported the same, it went from the technical custody, under the manufacturer's bond, of the internal-revenue bureau, to a foreign country. All jurisdiction of the internal-revenue bureau ceased by that exportation. When it was returned it was entered by an importer and was subject to the laws and regulations applicable to importers of tobacco. That importer in this case was Keer, Maurer Co., who had no status so far as the record shows as "tobacco manufacturer" and who did not comply with any regulation promulgated whereby an importer may be permitted to withdraw tobacco without the payment of the internal-revenue tax until the tobacco had been manufactured.

Furthermore, it is not altogether clear that the collector was satisfied of the integrity of this shipment as American goods returned. In fact, I do not see how

he could have been satisfied to accept the same as American goods returned, in view of the notation placed on the invoice by the officer whose duty it was to protect the Government in this respect. Nor has the testimony of the witness assuming to identify the merchandise satisfied this member of the court on that point. That witness examined four cases and was uncertain in identifying the same. True, the cases bear the same package numbers. We must accept the certificate of the inspector as to the branding of the same on export. Having been so branded, it is hard to believe that the local customs officials as well as the witness who testified, if he actually examined the packages, would not have discovered the brands which would have conclusively established the identity of the merchandise. If the tobacco could be identified then it seems to me the owner could procure a remittance of the internal-revenue tax collected thereon by showing that he had paid that internal-revenue tax as duties. The fact that the case is before us raises the presumption that he could not so identify it or that he is willing to accept a remission from both the customs and the internal-revenue bureaus of the Government.

Further, on the question of identification of the tobacco, it is to be noted that when these cases of scraps or siftings were withdrawn for export the net weight was 2,049 pounds. The merchandise entered as returned American products weighed 2,500 pounds, while the testimony discloses that the merchandise claimed to have been sent to the manufacturer as of this quantity of American goods returned amounted to 2,954 pounds, the same being the total of the items checked on Illustrative Exhibit 1. No explanation has been offered for these discrepancies, but if they can be explained and if the merchandise can be identified to the satisfaction of the internal-revenue bureau, undoubtedly relief could be had in the internal-revenue bureau, if anyone is entitled to remission. However, that is not a matter for the Bureau of Customs to adjudicate. It clearly appears from the statutes, from the regulations issued by the internal-revenue department, and from the withdrawal entry for exportation, that the duty in the amount of $368.82 was rightfully collected and therefore that the importer is not entitled to a refund from the collector of customs.

The protest should be overruled.